**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DONALD J. LANPHERE, JR., | ) | |
| | ) | Civil Action No.: 10-4774 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Hon. Judge: |
| 1 CORP. a/k/a 1 Corp. Apparel & | ) | |
| Promotional Solutions; | ) | |
| GLOBAL TRADING SOLUTIONS, INC. a/k/a | ) | Magistrate Judge: |
| GTS Importers; | ) | |
| TERRY SCWABE, individually and | ) | |
| as principal of 1 Corp.; | ) | |
| TOM LAWRENCE, individually and | ) | |
| as principal of 1 Corp.; | ) | |
| STEVE LUNDGREN, individually and | ) | |
| as principal of Global Trading Solutions; | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | **JURY TRIAL DEMANDED** |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff DONALD J. LANPHERE, JR. (hereinafter "Don Lanphere"), by his undersigned attorneys, for their complaint against Defendants 1 CORP., GLOBAL TRADING SOLUTIONS, INC. (hereinafter "GTS"), TERRY SCHWABE, TOM LAWRENCE, and STEVE LUNDGREN (hereinafter collectively "the Defendants"), states and alleges as follows:

**Cause of Action**

1. This action arises from the Defendants' willful misappropriation of Don Lanphere's rights in and to his original, patented and highly distinctive Helmet-Shaped Hat With Facemask (hereinafter "patented product"), and to the Defendants' manufacturing, marketing, use and/or sale of products that are wholesale imitations of Don Lanphere's patent product.

2.  This action is for design patent infringement under 35 U.S.C. §271 *et seq.*, trade dress infringement, unfair competition and false designation of origin, under 15 U.S.C. §1125(a), and related state and common law claims.  Don Lanphere seeks a preliminary and permanent injunction and damages, including treble damages and attorneys' fees for willfulness under 35 U.S.C. §284 and §285 and 15 U.S.C. §1117, against the Defendants, preventing the Defendants from further manufacture, use, importation, offer for sale, and/or sale of any and all products or the like which infringe directly or indirectly upon Don Lanphere's U.S. Patent Number D559,502S, his rights under the Lanham Act and at common law, and from otherwise competing unfairly with Don Lanphere.

## Parties

3.  Plaintiff Don Lanphere is an individual, U.S. citizen residing at 1741 Ridgewood Ln. E., Glenview, Illinois 60025.

4.  Upon information and belief, Defendant 1 Corp. is a foreign corporation having a place of business at 767 Fifty-Second Avenue, Suite 203, Moline, Illinois 61265.

5.  Upon information and belief, 1 Corp. has been, and is doing business in the state of Illinois and within this judicial district.

6.  Upon information and belief, Defendant GTS is a foreign corporation having a place of business at 8004 Reeder St., Overland Park, Kansas, 66214.

7.  Upon information and belief, GTS has been, and is doing business in the state of Illinois and within this judicial district.

8.  Upon information and belief, Defendant Terry Schwabe is an individual, U.S. citizen having an address at 767 Fifty-Second Avenue, Suite 203, Moline, Illinois 61265.

9.  Upon information and belief, Terry Schwabe is a principal of 1 Corp. and is doing business in the state of Illinois and within this judicial district through his company 1 Corp.

10.  Upon information and belief, Defendant Tom Lawrence is an individual, U.S. citizen having an address at 767 Fifty-Second Avenue, Suite 203, Moline, Illinois 61265.

11.  Upon information and belief, Tom Lawrence is a principal of 1 Corp. and is doing business in the state of Illinois and within this judicial district through his company 1 Corp.

12.  Upon information and belief, Defendant Steve Lundgren is an individual, U.S. citizen having an address at 8004 Reeder St., Overland Park, Kansas, 66214.

13.  Upon information and belief, Steve Lundgren is a principal of GTS and is doing business in the state of Illinois and within this judicial district through his company GTS.

## Jurisdiction and Venue

14.  This action arises under the provisions of 35 U.S.C. §1 *et seq.*, and 15 U.S.C. §1125 *et seq.*

15.  This Court has jurisdiction of these claims under, *inter alia*, the provisions of 35 U.S.C. §271 *et seq.*, and 15 U.S.C. §1501 *et seq.* and 28 U.S.C. §§1331 and 1338.  This Court has jurisdiction over the state law and common law claims in this action pursuant to 28 U.S.C. §1367(a) because the state law and common law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

16.  Venue is proper in this District under, *inter alia*, the provisions of Section 1391 and 1400 of Title 28, United States Code.

3

## Background Facts

17.     On January 15, 2008, United States Patent No. D559,502S ("the '502 patent"), entitled "Helmet-Shaped Hat with Facemask," was duly and legally issued to Don Lanphere, the named inventor and sole owner of the subject matter claimed in the '502 patent. A true and correct copy of the '502 patent is attached hereto as Exhibit A.

18.     In the late summer/early fall of 2009, an acquaintance of Don Lanphere, Mr. Todd Potter, introduced him to the principals of 1 Corp., Terry Schwabe and Tom Lawrence, who agreed to secure for Don Lanphere the necessary licenses to gain accesses to the collegiate market for, and to act as a distributor of the patented products. Terry Schwabe, Tom Lawrence and 1 Corp. accepted an inventory of 10,000 of the patented products, after informing Don Lanphere that they would quickly obtain the necessary licenses and begin distributing the patented products during the 2009 college football season.

19.     The inventory of patented products each included a label bearing a patent marking giving notice that the patented products are covered by the '502 patent. Upon information and belief, all of the Defendants had actual notice of the '502 patent.

20.     After the inventory of the patented products was ready for sale, Don Lanphere repeatedly asked Terry Schwabe, Tom Lawrence and 1 Corp. when they would start distributing the patented products. Terry Schwabe, Tom Lawrence and 1 Corp. repeatedly kept telling Don Lanphere that they would start shipping the patented products within just a few days. Despite their assurances that the patented products would soon be distributed, days turned to weeks and the patented products were never distributed.

4

21.     Subsequently, Don Lanphere learned that Terry Schwabe, Tom Lawrence and 1 Corp. never obtained any licenses for the patented products.  On November 25, 2009, the day before Thanksgiving, after having been repeatedly misled by Terry Schwabe, Tom Lawrence and 1 Corp., Don Lanphere rented a truck and drove approximately 200 miles to pick up the inventory of patented products which were never distributed.

22.     While driving to 1 Corp.'s warehouse on November 25, 2009, Don Lanphere called Terry Schwabe, Tom Lawrence and 1 Corp. and informed them of his intention to pick up his inventory.  Thereafter, Terry Schwabe sent Don Lanphere an email indicating that 1 Corp. had closed early that day, and that it would reopen on the following Monday.

23.     Upon arriving at 1 Corp. that day, Don Lanphere learned that 1 Corp. had recently changed all of the locks to the warehouse that held the inventory of patented products.

24.     After several frantic phone calls from Don Lanphere, Terry Schwabe and Tom Lawrence finally agreed to meet Don Lanphere at the warehouse.  When they did, Terry Schwabe, Tom Lawrence and 1 Corp. presented Don Lanphere with a list of charges (attached hereto as Exhibit B), and demanded over $9,000 in highly questionable and/or trumped up fees, expenses and/or costs before they would release the inventory to Don Lanphere.

25.     Having rented a truck and having just driven over 200 miles, on the eve of Thanksgiving, and feeling isolated, dejected, frightened, helpless and/or pressured by Terry Schwabe, Tom Lawrence and 1 Corp., Don Lanphere caved into their demands under great duress. Don Lanphere gave Terry Schwabe, Tom Lawrence and 1 Corp. his credit card, and they proceeded to make four $2000 charges to his credit card ($8000 total) until it was maxed out.  Don Lanphere was then allowed to leave with his inventory of patented products.

5

26.     In late February 2010 or early March 2010, in a letter attached hereto as <u>Exhibit C</u>, Don Lanphere demanded that the $8000 which Terry Schwabe, Tom Lawrence and 1 Corp. charged to Don Lanphere's credit card, be given back or returned to Don Lanphere.

27.     Don Lanphere then learned, upon information and belief, that Terry Schwabe, Tom Lawrence and/or 1 Corp. contacted Todd Potter and indicated that they were going to copy the patented product and make and sell the patent product as their own. Attached hereto as <u>Exhibit D</u> is a true and correct copy of the Declaration of Todd Potter attesting to the same.

28.     Subsequently, during the spring/summer of 2010, Don Lanphere began the process of obtaining licenses from several Big Ten schools for his patented product.

29.     A few weeks ago, Don Lanphere received a call from the licensing department at Northwestern University (hereinafter "NU"). NU asked Don Lanphere if they he had sold his patent or if he was somehow affiliated with 1 Corp. and/or GTS since they had recently applied for a license on the patented product as well.

30.     Attached hereto as <u>Exhibit E</u>, is a photo of the helmet-shaped hat with facemask which, upon information and belief, 1 Corp. and/or GTS is making and has applied for one or more collegiate licenses and/or other licenses. Upon information and belief, this helmet-shaped hat with facemask is substantially similar to and appropriates the point of novelty in the claimed design in the '502 patent, and appears to be a deliberate copy of the patented product.

31.     On information and belief, the Defendants are infringing the '502 patent by making, using, importing, offering for sale, and/or selling one or more products which infringe the '502 patent, including, but not limited to, the helmet-shaped hat with facemask depicted in <u>Exhibit E</u>, and that this infringement is willful and deliberate.

6

32. On information and belief, the Defendants intentionally and willfully have and continue to manufacture, import, use, offer for sale and/or sell one or more infringing products, despite having actual or at least constructive knowledge of the '502 patent.

33. Upon information and belief, the Defendants' copying of Don Lanphere's patented product and design has caused actual confusion and is likely to cause confusion, to the detriment of Don Lanphere.

## COUNT I

## Patent Infringement of the '502 Patent

34. Don Lanphere repeats and realleges paragraphs 1-33 as though fully stated herein.

35. Through the conduct described above, the Defendants have infringed and continue to infringe the '502 patent in violation of 35 U.S.C. §271 by importing, making, using, offering for sale and/or selling in the United States one or more products embodying the patented invention.

36. Don Lanphere has given notice of the '502 patent to the Defendants, at least in the manner required by 35 U.S.C. §287(a).

37. On information and belief, the Defendants' actions constitute knowing and willful infringement of the '502 patent.

38. As a result of the Defendants' infringement, Don Lanphere has been and, unless restrained by this Court, will continue to be irreparably harmed, damaged and injured.

39. This is an exceptional case pursuant to 35 U.S.C. §285.

## COUNT II

### Trade Dress Infringement,
### Federal Unfair Competition and False Designation of Origin

40.     Don Lanphere repeats and realleges paragraphs 1-39 as though fully stated herein.

41.     The Defendants' unauthorized copying and use of the distinctive and source identifying trade dress in the patented product and patented design falsely indicates that Don Lanphere or his agents are connected with, sponsored, endorsed, authorized, or approved by, or affiliated with the Defendants, or that the Defendants are connected with, sponsored, endorsed, authorized, or approved by, or affiliated with Don Lanphere.

42.     The Defendants' use of the distinctive and source identifying trade dress in the patented product and patented design is likely to cause confusion, mistake or deception as to the source or affiliation of the Defendants' goods.

43.     The acts of the Defendants complained of herein constitute a false designation of origin, unfair competition and infringement, in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125.

44.     On information and belief, the Defendants' actions complained of herein were committed willfully.

45.     As a result of the foregoing alleged actions of the Defendants, the Defendants are being unjustly enriched and Don Lanphere has been and is being injured and damaged. Unless the foregoing alleged actions of the Defendants are restrained by this Court, Don Lanphere will continue to be irreparably harmed, damaged and injured.

## COUNT III

## Common Law Trade Dress Infringement,
## Unfair Competition and False Designation of Origin

46.     Don Lanphere repeats and realleges paragraphs 1-45 as though fully stated herein.

47.     The acts of the Defendants complained of herein constitute infringement, false designation of origin and unfair competition in violation of the common law.

48.     On information and belief, the Defendants, with full knowledge of Don Lanphere's rights in and to the distinctive and source identifying trade dress in the patented product and patented design, have committed the acts alleged herein willfully, with the intent to trade on, or in complete disregard of Don Lanphere's rights and the goodwill associated with the patented product.

49.     As a result of the foregoing alleged actions of the Defendants, the Defendants are being unjustly enriched and Don Lanphere has been and is being injured and damaged.  Unless the foregoing alleged actions of the Defendants are restrained by this Court, Don Lanphere will continue to be irreparably harmed, damaged and injured.

## COUNT IV

## Illinois Uniform Deceptive Trade Practices Act

50.     Don Lanphere repeats and realleges paragraphs 1-49 as though fully stated herein.

51.     By reason of the conduct described above, the Defendants have engaged in unlawful, unfair and/or fraudulent ongoing business practices.

52.     As a direct result of the Defendants' unfair competition, the Defendants have unlawfully acquired, and continue to acquire on an ongoing basis, an unfair competitive advantage and have engaged, and continue to engage, in wrongful business conduct to their advantage and to

the detriment of Don Lanphere and his rights.

53.     The Defendants' aforesaid unauthorized use of the distinctive and source identifying trade dress in the patented product and patented design for their goods is likely to cause confusion, mistake or deceit and has actually caused confusion, mistake or deceit as to the source, sponsorship, approval, affiliation or connection by and between Don Lanphere's and the Defendants' goods and will give rise to and has given rise to the incorrect belief that Don Lanphere and the Defendants have some connection or affiliation, and dilutes the distinctive quality of Don Lanphere's trade dress and irreparably damages Don Lanphere's goodwill and business, all in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

54.     As a result of the foregoing alleged actions of the Defendants, the Defendants are being unjustly enriched and Don Lanphere has been and is being injured and damaged.  Unless the foregoing alleged actions of the Defendants are restrained by this Court, Don Lanphere will continue to be irreparably harmed, damaged and injured.


**COUNT V**

**Common Law Conversion**

55.     Don Lanphere repeats and realleges paragraphs 1-54 as though fully stated herein.

56.     Terry Schwabe, Tom Lawrence and 1 Corp. improperly obtained under false pretenses and under duress, and wrongfully assumed control, dominion or ownership over the sum of $8000 from Don Lanphere.

57.     Terry Schwabe, Tom Lawrence and 1 Corp. were not and are not rightfully entitled to the $8000 obtained from Don Lanphere.  Instead, Don Lanphere has the right to the $8000 at issue.

10

58. Don Lanphere has the absolute and unconditional rights to immediate possession of the $8000 at issue.

59. Don Lanphere has demanded that Terry Schwabe, Tom Lawrence and 1 Corp. give back or return the $8000, but they have failed to do so.

**WHEREFORE,** plaintiff Don Lanphere prays that this Court enter judgment against the Defendants as follows:

A. That the '502 patent is valid and enforceable;

B. That the Defendants have been and are infringing the '502 patent pursuant to 35 U.S.C. §271;

C. That the Defendants, their agents, officers, servants, employees, attorneys, successors, companies, customers and assignees, and all those in active concert or participation with them, be preliminarily, permanently and finally enjoined from activities infringing upon the '502 patent;

D. That the Defendants' infringement of the '502 patent has been willful;

E. That this Court award damages adequate to compensate Don Lanphere for the Defendants' infringement of the '502 patent pursuant to 35 U.S.C. §284 and 35 U.S.C. §289;

F. That this Court award treble damages pursuant to 35 U.S.C. §284;

G. That this is an exceptional case pursuant to 35 U.S.C. §285;

H. That this Court award reasonable attorneys' fees pursuant to 35 U.S.C. §285;

I. That the Defendants have infringed upon the distinctive and source identifying trade dress in the patented product and patented design under 15 U.S.C. §1125 and at common law; have competed unfairly with Don Lanphere under §43 of the Lanham Act and at common law, have

11

violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2; and have otherwise injured Don Lanphere's business and have misappropriated Don Lanphere's rights by using the distinctive and source identifying trade dress in the patented product and patented design in connection with the Defendants' competing products without permission or license;

J.      That this Court preliminarily, permanently and finally enjoin the Defendants, their agents, officers, servants, employees, attorneys, successors, companies, customers and assignees, and all those in active concert or participation with them, from using the distinctive and source identifying trade dress in the patented product and patented design or from using any other confusingly similar design, and from infringing Don Lanphere's trade dress, and damaging the business of Don Lanphere and otherwise competing unfairly with Don Lanphere;

K.      That this Court issue an order requiring the Defendants and all those in privy or concert therewith to deliver up for destruction all infringing products, including containers, labels, signs, packages, wrappers, articles and promotional and advertising materials of any kind, in their possession or under their control relating to the infringing products;

L.      That this Court award to Don Lanphere such damages as he has sustained in consequence of the Defendants' infringement, unfair competition, false designation of origin, and other unlawful acts and activities, as well as the Defendants' profits, and to account for all gains, profits and advantages derived by the Defendants therefrom, and to award appropriate exemplary and/or treble damages so as to set an example that the willful acts of the Defendants cannot be condoned and further damages under 15 U.S.C. §1117 for willfulness should be awarded to Don Lanphere;

M.      That all costs and expenses in this action, including reasonable attorney's fees as provided for inter alia by 15 U.S.C. §§1117 and 1125, and appropriate interest on all damages

12

sustained by Don Lanphere, be taxed in favor of Don Lanphere and against the Defendants and that Don Lanphere shall have judgment and execution thereof against the Defendants;

      N.     That Don Lanphere be awarded punitive damages under the unfair competition common law;

      O.     That Don Lanphere be awarded $8000 under the common law of conversion; and

      P.     That this Court grant all other relief as this Court may deem just and proper.

      Respectfully submitted,

      **DONALD J. LANPHERE, JR.**

Date: _July 29, 2010_        By:     _s/Charles T. Riggs Jr._

      *One of the Attorneys for Plaintiff*

Timothy T. Patula
Charles T. Riggs Jr.
PATULA & ASSOCIATES, P.C.
116 S. Michigan Ave., 14th Fl.
Chicago, Illinois 60603
(312) 201-8220

riggs@patula.com

76C52

13

# EXHIBIT A



US00D559502S

(12) **United States Design Patent**     (10) Patent No.:     **US D559,502 S**
    Lanphere, Jr.                                     (45) Date of Patent:     ** **Jan. 15, 2008**

(54) **HELMET-SHAPED HAT WITH FACEMASK**

(76) Inventor: **Donald J. Lanphere, Jr.,** 1741 Ridgewood Ln. E., Glenview, IL (US) 60025

(**) Term: **14 Years**

(21) Appl. No.: **29/285,045**

(22) Filed: **Mar. 20, 2007**

(51) LOC (8) Cl. .................................................. **02-03**

(52) U.S. Cl. ...................................................... **D2/870**

(58) Field of Classification Search ................. D2/865, D2/866, 871, 872, 873, 875, 876, 879, 882, D2/884, 867, 868, 869, 870, 878, 888, 889; 2/9, 10, 12, 171, 171.1, 171.5, 181, 183, 2/184, 195.3, 410; D29/106
See application file for complete search history.

(56)     **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D141,256 S | * | 5/1945 | Dannenberg | ............... D29/105 |
| 2,619,639 A | * | 12/1952 | Hendler | ........................... 2/423 |
| 2,647,264 A | * | 8/1953 | Dear Hutton | ................ 2/200.2 |
| D235,940 S | * | 7/1975 | Stock | ............................ D2/870 |
| D235,941 S | * | 7/1975 | Stock | ............................ D2/870 |
| D237,844 S | * | 12/1975 | Stock | ............................ D2/870 |
| D307,268 S | * | 4/1990 | Lee | ............................ D14/126 |
| D312,915 S | | 12/1990 | Gilfert et al. | |
| D338,546 S | * | 8/1993 | Barker | ....................... D29/106 |
| D366,347 S | * | 1/1996 | Avey | ........................... D29/106 |
| D366,539 S | * | 1/1996 | Lackovic | ................. D29/106 |
| D366,557 S | | 1/1996 | Ashby et al. | |
| D369,154 S | * | 4/1996 | Powell | ....................... D14/403 |
| D378,158 S | * | 2/1997 | Casey | ......................... D2/889 |
| D382,671 S | * | 8/1997 | Shewchenko | .............. D29/106 |
| D397,580 S | * | 9/1998 | Dunn et al. | ................ D7/402 |
| D420,670 S | * | 2/2000 | Hernandez et al. | ........ D14/232 |
| D426,371 S | | 6/2000 | Mandzick | |
| D443,405 S | * | 6/2001 | Quiroz | .......................... D2/869 |
| 6,401,258 B1 | | 6/2002 | Wilson | |
| D461,152 S | * | 8/2002 | Schmitt | ...................... D12/197 |
| D478,204 S | | 8/2003 | Cortez et al. | |

| | | | | |
|---|---|---|---|---|
| D487,409 S | * | 3/2004 | Philipson | ..................... D11/81 |
| 6,966,068 B2 | * | 11/2005 | Johnson et al. | .............. 2/200.2 |

(Continued)

OTHER PUBLICATIONS

Printout (5 pages) from website www.ramstailgating.com advertising the HelmHat from Johnny GridIron on p. 3 of the printout. Printout (2 pages) from website www.collegegear.com advertising the College Helmet Hat on p. 2 of the printout.

*Primary Examiner*—Elizabeth A. Albert
*Assistant Examiner*—Karen E Eldridge Powers
(74) *Attorney, Agent, or Firm*—Patula & Associates, P.C.

(57)     **CLAIM**

The ornamental design for a helmet-shaped hat with facemask, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective view of a helmet-shaped hat with facemask, showing the facemask portion attached;

FIG. **2** is a perspective exploded view of a helmet-shaped hat with facemask, showing the facemask portion detached;

FIG. **3** is a side view of the helmet-shaped hat with facemask of FIG. **1**.

FIG. **4** is an opposite side view of the helmet-shaped hat with facemask of FIG. **1**.

FIG. **5** is a front view of the helmet-shaped hat with facemask of FIG. **1**.

FIG. **6** is a back view of the helmet-shaped hat with facemask of FIG. **1**.

FIG. **7** is a top view of the helmet-shaped hat with facemask of FIG. **1**; and,

FIG. **8** is a bottom view of the helmet-shaped hat with facemask of FIG. **1**.

The broken lines illustrate environmental matter, and form no part of the claimed design.

1 Claim, 2 Drawing Sheets



**US D559,502 S**

Page 2

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D518,738 S | * | 4/2006 | Dreggors ...................... D10/6 |
| D525,767 S | | 8/2006 | Boyle |
| D526,450 S | * | 8/2006 | Taylor et al. .............. D30/111 |

| | | | |
|---|---|---|---|
| D539,514 S | * | 4/2007 | Talley ......................... D2/878 |
| 2004/0250337 | A1 | 12/2004 | Pietrzykowski |
| 2007/0157370 | A1* | 7/2007 | Joubert Des Ouches ....... 2/410 |

* cited by examiner



*FIG. 1*



*FIG. 2*

FIG. 3

FIG. 4

FIG. 5

FIG. 6

FIG. 7

FIG. 8

**EXHIBIT B**

**From:** Terry Schwabe [mailto:terry@1corpweb.com]
**Sent:** Wednesday, November 25, 2009 12:55 PM
**To:** 'donlanphere@aol.com'
**Subject:**

Don,  Sorry you have chosen to back out of our agreement.  A large amount of time and money have gone into making
this project a success. I am giving you a summary of the charges.

| | |
|---|---|
| *Labor building the front room for the printing of logos. $500.00 | |
| *Supplies for building the room | $260.00 |
| *Cutting mat | $180.00 |
| *Tools | $60.00 |
| *Substrates and backing | $600.00 |
| *ink | $180.00 |
| *trip to Des Moines overnight | $418.00 |
| *Lundgren trip to Q.C | $502.00 |
| *storage unit | $275.00 |
| *Lundgren charges for the following: | |
| Pattern charges, air freight, packaging, pop displays | |
| Insurance policy, licensing stickers, artwork and layout | |
| For packaging logos and upc coding, setting up sales | |
| network with reps and much more | $1,500.00 |
| *Freight for sending out samples to Wall mart, | |
| Cowboys, Scheels, Sports Avenue, and many | |
| more customers and reps. | $170.00 |
| Many hours spent by Steve,  Tom, Terry, and Stephanie | |
| To get project started and to spend time | |
| Going back and letting customers and reps know | |
| Project is over | $4000.00 |
| *Attorney fees | $500.00 |

TOTAL $9,145.00

As you can see, Tom and I have spent a lot of time, energy and money to get this project started. Upon payment for
these expenses,  we will release the existing blank inventory to you. Please let us know when a time will work for you so
we can assist you. we are closing our office today at 1:00 and will return after the Holiday on Monday.

1

# EXHIBIT C

Terry Schwabe
Tom Lawrence
1 Corp. Apparel & Promotional Solutions
767 Fifty-Second Avenue, Suite 203
Moline, IL 61265

RE:    Huddle Hat Inc.
       Our File No. 10210-01

Dear Sirs:

We represent Huddle Hat Inc. ("Huddle Hat"). We have been advised by our client that your company previously accepted significant inventory from Huddle Hat as part of an effort to become a distributor for its unique product. However, we were also informed that subsequent to your acceptance of this product, you failed to display or otherwise market the items, leaving them packaged in the back of your retail location for months. Finally, when requested by Huddle Hat simply to return the product due to your failure to display it, you demanded the sum of $8,000.00 before releasing the items to Huddle Hat. Because you refused to release the merchandise otherwise, Huddle Hat paid the amount demanded, but did not agree or consent that it was due.

However, we understand that neither you nor your company have any agreement with Huddle Hat that required or provided for the sum demanded. The only written, signed agreement between your company and Huddle Hat dealt with the minimum number of items to be sold. The payment was made to you under duress, without consideration, and without any basis in the law. As such, Huddle Hat hereby demands return of the $8,000.00 from you immediately. Failure to do so could constitute conversion, and Huddle Hat may then pursue all remedies legally available to it, including seeking punitive damages, costs and attorneys' fees. Your prompt attention to this matter is therefore required.

Please give us a call if you have any questions. Thank you for your anticipated cooperation.

Sincerely,

LATIMER LeVAY JURASEK LLC

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD J. LANPHERE, JR., | ) | Civil Action No.: |
| Plaintiff, | ) | Hon. Judge: |
| v. | ) | Magistrate Judge: |
| 1CORP. APPAREL & PROMOTIONAL SOLUTIONS; GTS IMPORTERS; TERRY SCHWABE, individually and as principal of 1 Corp. Apparel & Promotional Solutions; TOM LAWRENCE, individually and as principal of 1 Corp. Apparel & Promotional Solutions; and STEVE LUNDGREN, individually and as principal of GTS Importers; | ) | |
| Defendants. | ) | |

## DECLARATION OF TODD POTTER

*I, Todd Potter, hereby declare, under penalty of perjury, the following:*

1.   I am over the age of 18 and I am legally competent to testify to the statements made herein.

2.   The statements made herein are based on my personal knowledge except where it is noted that they are made on information and belief.

3.   I have known Donald J. Lanphere, Jr. ("Don") for numerous years, and I am aware of the Helmet-Shaped Hat with Facemask which he designed. I also am aware that Don had patented his Helmet-Shaped Hat with Facemask.

4.   I introduced Don to Terry Schwabe and Tom Lawrence of 1 Corp. Apparel & Promotional Solutions ("1 Corp."), believing that they could help Don obtain collegiate licenses and sell his Helmet-Shaped Hat with Facemask.

1

5. On several occasions Don, Terry, Tom and I met in person to plan the marketing and distribution of Don's Helmet-Shaped Hat with Facemasks. A meeting with Steve Lundgren, Don, Terry, Tom and myself also took place. It was agreed necessary licenses would be obtained in order to gain accesses to the collegiate market, and that the group would serve as the distributor of Don's Helmet-Shaped Hat with Facemasks. A brief contract was signed and dated by all parties to the effect. Significant inventory of Don's Helmet-Shaped Hat with Facemasks was accepted under the pretense that the products would be distributed in an acceptable timeframe.

6. Upon information and belief, as of November 25, 2009, 1 Corp had not secured the licenses or distributed inventory of Don's Helmet-Shaped Hat with Facemasks.

7. Further, upon information and belief, when Don went to 1 Corp. on November 25, 2009, to pick up his inventory of products Terry and Tom refused to give Don his inventory back and demanded an estimated $9,000 in fees and costs before they would release the inventory to Don.

8. Subsequently, on an undetermined date after January 1, 2010. Terry and Tom contacted me and indicated that they intended to develop a version of the product to produce and market and asked if I wanted to participate. I declined.

I declare under penalty of perjury that all of the above statements made of my own knowledge are true; and that all statements made on information and belief are believed to be true.

FURTHER DECLARANT SAYETH NOT.

Dated: 7-14-10                          By: _Todd Potter_
                                            Todd Potter

2

# EXHIBIT E

